1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

RICKEY CALHOUN,                    )
                                   )
            Plaintiff,             )        CASE NO.    C07-1758-JLR-JPD
                                   )
      v.                           )
                                   )
KING COUNTY PROSECUTING            )        REPORT & RECOMMENDATION
ATTORNEY'S OFFICE, *et al.*,       )
                                   )
            Defendants.            )
_____)

## INTRODUCTION

Plaintiff is currently housed in the Special Commitment Center operated by the Washington Department of Social and Health Services on McNeil Island, Washington.  He has filed a civil rights complaint pursuant to 42 U.S.C. § 1983, and has paid the filing fee.  (Dkt. No. 1).  After reviewing his complaint, the Court directed plaintiff to show cause why the complaint and this action should not be dismissed on various grounds.  (Dkt. No. 3).  Plaintiff filed a response, and defendants have filed a reply.  (Dkt. No. 5, 7).  Having considered the documents submitted by the parties, and the balance of the record, the Court concludes, for the reasons set forth below, that the complaint and this action should be dismissed.

## BACKGROUND

The Washington Court of Appeals recently summarized the complex facts underlying this lawsuit as follows:

REPORT & RECOMMENDATION
PAGE - 1

In November 1991, Rickey Calhoun pleaded guilty to an attempted second degree rape that occurred in 1990 and a second degree rape that occurred in 1989. The State assigned Calhoun an offender score of six for the rape and seven for the attempt. In the plea documents, the State had erroneously listed the seriousness level of the 1989 rape as ten, when it was actually eight. Calhoun was thus told the standard range for his 1989 offense was higher than it actually was. The State told Calhoun that it was recommending a sentence at the top of the higher standard range, 130 months, in exchange for the State's promise not to file charges in three additional sex crimes. Calhoun was also told that the statutory maximum for his crimes was ten years.

By the time the judgment and sentence was entered in January 1992, the State had discovered additional criminal history and claimed Calhoun's offender score was nine for both offenses. The error in seriousness level for the 1989 rape was corrected. The State again recommended a sentence at the top of the higher standard range, 148.5 months. The court accepted the State's recommendation and sentenced Calhoun to 148.5 months for the attempt, and 144 months for the rape, both at the top of their respective ranges and to be served concurrently. The record does not reflect that Calhoun was informed of the statutory one-year time limit for collateral attacks.

After the State's premature attempt to file a SVP [sexually violent predator] petition in 2000, Calhoun returned to prison. At about the same time, the Department of Corrections (DOC) discovered that Calhoun had been sentenced to more than the statutory maximum. The State filed a motion to modify the judgment and sentence, and on July 3, 2002, the superior court changed the sentence on both counts to 120 months. Calhoun was not notified of this proceeding, nor was an attorney for Calhoun present.

The State filed another SVP petition on July 12, 2002. The court found probable cause, and Calhoun is currently detained, awaiting his SVP trial.

When Calhoun learned of the July 2002, resentencing, he filed a motion to vacate the order, contending that his rights to counsel and to due process had been violated. He argued that his plea was involuntary because he was misinformed of the standard range. He also argued that his plea could not be used in the SVP proceeding.

The State conceded that the 2002 resentencing was invalid because Calhoun had not been given notice. In November 2004, the court vacated the original 1992 sentence and the 2002 order modifying the judgment and sentence. However, the court denied the plea withdrawal and set a date for resentencing.

In December 2004, the court resentenced Calhoun. A change in the law after the original sentencing in 1992 substantially changed Calhoun's new sentence. . . . The court sentenced Calhoun to 97.5 months and 61 months, to be served concurrently and noted that the sentence was satisfied. According to his November 1991 plea agreement, Calhoun acknowledged that the standard range and recommended sentence could change based on discovery of additional criminal history. His plea agreement further stipulated that he could not withdraw his plea due to an increase based on additional criminal history.

REPORT & RECOMMENDATION
PAGE - 2

1    *State v. Calhoun*, 2007 WL 1180401 (Unpublished Opinion, Wash. Ct. App., April 23, 2007)

2    (footnotes and citations omitted).

3        Plaintiff filed the instant complaint in federal court on October 31, 2007.  (Dkt. No. 1).  Upon

4    review of the complaint, the Court noted that the complaint contained numerous allegations but the

5    principal claim appeared to be that in 2001, King County prosecutor Jeffery Dernbach discovered the

6    error in plaintiff's sentence but did not inform plaintiff until 17 months later.  (Dkt. No. 1 at 13, 22,

7    26).  Thus, the gravamen of plaintiff's complaint appeared to be that plaintiff had served a longer

8    sentence than necessary due to the prosecutor's failure to divulge the error.  (Dkt. No. 3 at 1).

9        The Court found, however, that plaintiff's complaint faced three potentially insurmountable

10    barriers.  First, the Court found that plaintiff's complaint appeared to be barred by the applicable

11    statute of limitations.  A court may raise the defense of statute of limitations *sua sponte*, in the absence

12    of waiver by defendants.  *See Levald, Inc. v. City of Palm Desert*, 998 F.2d 680, 687 (9th Cir. 1993).

13    Because the events giving rise to plaintiff's allegations occurred in July 2002, the statute of limitations

14    would have expired in July 2005, or more than two years before plaintiff filed the instant lawsuit.

15        Second, the Court found that all the defendants named by plaintiff are prosecutors or

16    employees of the King County Prosecuting Attorney's Office.  Because prosecutors are generally

17    granted immunity for actions taken pursuant to their role as advocate, the Court advised plaintiff that

18    all defendants appeared protected by immunity.  *See Imbler v. Pachtman*, 424 U.S. 409, 430 (1976).

19        Finally, the Court observed that plaintiff was simultaneously seeking similar, if not identical,

20    relief in state court.  Plaintiff had stated in his complaint that he has a personal restraint petition

21    ("PRP") currently pending before the Washington Court of Appeals, in which he is seeking damages

22    for his allegedly "unlawful confinement."  (Dkt. No. 1 at 23).  Under *Younger v. Harris*, 401 U.S. 37

23    (1971), and its progeny, a federal court should abstain from hearing a case that would interfere with

24    ongoing state proceedings.

25        Accordingly, the Court issued an Order to Show Cause to plaintiff on November 19, 2007,

26    directing plaintiff to explain why his lawsuit is not barred by the above-mentioned obstacles.  (Dkt. No.

REPORT & RECOMMENDATION
PAGE - 3

3).  Plaintiff filed his response on December 18, 2007.  (Dkt. No. 5).  The Court directed defendants to
file a reply to plaintiff's response, and defendants did so on February 6, 2008.  (Dkt. No. 7).  The
matter is now ready for review.

<u>DISCUSSION</u>

In his response to the Court's Order to Show Cause, plaintiff first seeks to clarify the basis of
his claim.  He asserts that he "would like to clarify to the Court that he is not suing Mr. Dernbach
because of the error with Plaintiff's original sentence of 148.5 months as Mr. Dernbach had nothing to
do with it."  (Dkt. No. 5 at 3).  Instead, plaintiff states that he "is suing Mr. Dernbach for his *negligent*
actions in the ex parte re-sentencing July 3, 2002, and his complicity with the DOC in causing Plaintiff
further unlawful confinement that could have been avoided."  (*Id*.) (emphasis added).  The Court notes
that this "clarification" does not materially differ from the Court's reading of plaintiff's initial
complaint, as described above.  The Court further notes that neither in plaintiff's original complaint,
nor in his response to the Order to Show Cause, does plaintiff make any allegations that Mr. Dernbach
violated his civil rights *after* July 2002.

In his response, plaintiff also addresses each of the potential bars to the instant lawsuit.  First,
plaintiff contends that the three-year statute of limitations does not bar the lawsuit because he "did not
learn he spent any time unlawfully confined . . . until December 3, 2004, when [he] was re-sentenced
to 97.5 months by the Honorable Michael C. Hayden."  (Dkt. No. 5 at 4) (emphasis and footnote
omitted).  Plaintiff further asserts that the earliest he could have learned of Mr. Dernbach's role was
November 5, 2004, "when Judge Hayden ruled the ex parte sentence modification of July 3, 2002 was
invalid . . . ."  (*Id*. at 5).  Second, plaintiff contends that Mr. Dernbach is not protected by immunity
for his actions at the ex parte hearing because the prosecutor stepped outside his role as advocate
when he filed a declaration with the state court and thereby acted as a witness before that court.  (*Id*.
at 8).  Finally, plaintiff contends that the *Younger* abstention rule does not apply here because the relief
he is seeking in state court (release from confinement) differs from the relief he seeks here (money
damages).

REPORT & RECOMMENDATION
PAGE - 4

1    Defendants respond to plaintiff's arguments in their reply.  (Dkt. No. 7).  Defendants dispute

2    plaintiff's assertion that he did not learn of Mr. Dernbach's role in the July 2002 re-sentencing until

3    November 2004.  Instead, defendants contend that plaintiff learned of Mr. Dernbach's role in the ex

4    parte hearing no later than August 3, 2003, when he filed a pleading in state court that contained many

5    of the same allegations regarding Mr. Dernbach's conduct that he raises here.  (*Id*. at 2).  Defendants

6    attach a copy of this pleading to their reply.  (Dkt. No. 8., Ex. 1).

7    In addition, defendants assert that Mr. Dernbach is protected by immunity for his actions

8    because his statement to the court pertained solely to the question of "the steps that he had taken in

9    order to provide notice to the Public Defenders' Office of the order he was presenting to the Court."

10   (Dkt No. 7 at 3).  In other words, although defendants concede that Mr. Dernbach made factual

11   representations to the state court, they argue that in doing so, he was not functioning as a

12   "complaining witness" but was merely making statements in his role as a prosecutor.  Finally,

13   defendants contend that Mr. Dernbach is shielded by qualified immunity because even if he violated

14   plaintiff's civil rights, it was reasonable for the prosecutor to have believed that his conduct was

15   lawful.  (*Id*.)

16   The Court need not reach the qualified immunity issue because it finds that defendants'

17   argument on the first two points is persuasive.  The pleading provided by defendants demonstrates that

18   in August 2003, plaintiff sought to dismiss a petition pending in state court to have plaintiff committed

19   as a sexually violent predator.  (Dkt. No. 8, Ex. 1).  As grounds for the dismissal, plaintiff cited alleged

20   instances of prosecutorial misconduct.  (*Id*. at 6-8). Included in the list of allegations is the following

21   description of Mr. Dernbach's role:

22          19.  On July 3, 2003, DPA Jeffery Dernbach submits an ex parte motion for
      sentence modification.  As part of the motion, Dernbach states that he had spoken
23    to Leslie Gordon [sic] of the Defender's Association and that she agreed the
      sentence should be [sic] reflect the 10 year maximum. However, Leslie Garrison
24    submitted a declaration that she told Dernbach that neither she nor anyone in her
      office represented respondent.
25
26   (Dkt. No. 8, Ex. 1 at 8).  These allegations parallel the ones plaintiff makes here.  The pleading

REPORT & RECOMMENDATION
PAGE - 5

1  demonstrates that plaintiff knew of Mr. Dernbach's allegedly improper role in the 2002 re-sentencing

2  no later than August 8, 2003.  The three-year statute of limitations consequently expired on August 9,

3  2006, and the instant lawsuit was filed more than one year too late.  *See Bagley v. CMC Real Estate*

4  *Corp.*, 923 F.2d 758, 760 (9th Cir. 1991).

5        In addition, the Court finds that Mr. Dernbach's statements to the Court were made in his role

6  as an advocate and not as a complaining witness.  The statements pertained only to procedural aspects

7  of the case and did not touch upon the merits of the matter.  *Cf. Kalina v. Fletcher*, 522 U.S. 118, 131

8  (1997) (holding that a prosecutor was not immune from liability for making false statements of fact in

9  an affidavit supporting a request for an arrest warrant).  Therefore, Mr. Dernbach's actions are

10  shielded by prosecutorial immunity.

11        Finally, the Court notes that even if this action were not barred by the applicable statute of

12  limitations, and even if Mr. Dernbach's actions were deemed to fall outside his role as advocate and

13  thereby subject him to suit, the Court would have still have doubts that plaintiff's complaint states a

14  claim upon which relief could be granted.  As noted earlier, plaintiff alleges that Mr. Dernbach acted

15  *negligently* in the ex parte re-sentencing of July 3, 2002.[1]  Although not briefed by the parties, it

16  appears that an unwavering principle of § 1983 actions is that government officials cannot be held

17  liable for mere negligence.  *See, e.g., Davidson v. Cannon*, 474 U.S. 344, 347 (1986) ("[W]here a

18  government official is merely negligent in causing the injury, no procedure for compensation is

19  constitutionally required.").  To permit actions based upon mere negligence "would make of the

20  Fourteenth Amendment a font of tort law to be superimposed upon whatever systems may already be

21  administered by the States."  *Paul v. Davis*, 424 U.S. 693, 701 (1976).  Accordingly, it appears that

22  for this additional reason, plaintiff's § 1983 action may not proceed here.

23

24  _____

25        [1] The Washington State Bar Association, in response to a grievance filed by plaintiff,
   investigated Mr. Dernbach's role in the re-sentencing and came to a similar conclusion, calling his

26  actions "an isolated instance of misconduct" which was "merely negligent." (Dkt, No. 5, Ex. 6 at 5).

REPORT & RECOMMENDATION
PAGE - 6

1

<u>CONCLUSION</u>

2     For the foregoing reasons, plaintiff has failed to overcome the obstacles set forth by the Court

3 in the Order to Show Cause.  Therefore, the Court recommends that plaintiff's complaint and this

4 action be dismissed for failing to state a claim upon which relief can be granted.  A proposed Order

5 reflecting this recommendation is attached.

6     DATED this 19th day of February, 2008.

7

8     *James P. Donohue*

JAMES P. DONOHUE

9     United States Magistrate Judge

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

REPORT & RECOMMENDATION
PAGE - 7